13-1619

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

LOUISIANA FISH FRY PRODUCTS, LTD.,

Petitioner,

v.

DEPARTMENT OF COMMERCE,

Respondent.

---

PETITION FOR REVIEW FROM TRADEMARK TRIAL AND APPEAL
BOARD IN 77816809

---

BRIEF OF PETITIONER LOUISIANA FISH FRY PRODUCTS, LTD.

R. Bennett Ford, Jr.
Alana O. Fernandez
**ROY, KIESEL, FORD, DOODY
& THURMON**
9100 Bluebonnet Centre Blvd.
Suite 100
P.O. Box 15928
Baton Rouge, LA 70895
(225) 927-9908
rbf@roykiesel.com

Attorneys for Petitioner

November 4, 2013

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Louisiana Fish Fry Products, Ltd.

No.: 13-1619

## CERTIFICATE OF INTEREST

Counsel for the Petitioner, Louisiana Fish Fry Products, Ltd. certifies the following:

1.  The full name of every party or amicus represented by me is: Louisiana Fish Fry Products, Ltd.

2.  The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: N/A.

3.  All parent corporations and any publicly held companies that own 10 percent of more of the stock of the party or amicus curiae represented by me are: None.

4.  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are: Roy Kiesel Ford Doody & Thurmon: R. Bennett Ford, Jr.; Alana O. Fernandez.

November 4, 2013

s/R. Bennett Ford, Jr./
Signature of counsel

R. Bennett Ford, Jr.
Printed name of counsel

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................ i

TABLE OF CONTENTS ...................................................................... ii

TABLE OF AUTHORITIES ................................................................. iv

STATEMENT OF RELATED CASES ................................................... 1

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUES ........................................................... 2

STATEMENT OF THE CASE .............................................................. 2

STATEMENT OF FACTS ..................................................................... 2

SUMMARY OF THE ARGUMENT ...................................................... 5

APPLICABLE STANDARD OF REVIEW ........................................... 5

ARGUMENT ....................................................................................... 7

I.  The PTO incorrectly determined that FISH FRY PRODUCTS is generic because the relevant purchasing public does not primarily refer to "marinade; sauce mixes, namely barbecue shrimp sauce mix; remoulade dressing; cocktail sauce; seafood sauce; tartar sauce; gumbo filé; cayenne pepper" as FISH FRY PRODUCTS or understand the primary meaning of FISH FRY PRODUCTS to be a reference to those goods. ........................... 7

    a.  The PTO had the burden of proving genericness by clear evidence. .... 7

    b.  The PTO incorrectly categorized the genus of the goods at issue as "marinades, sauces, and spices *used for fish fries*," instead of the correct genus, "marinades, sauces, and spices." .................................. 8

    c.  The PTO committed legal error when it incorrectly applied the *Gould* test in its attempt to show that the relevant purchasing public

       primarily understands FISH FRY PRODUCTS to mean "marinades, sauces, and spices." ................................................................. 11

d.    The Board did not meet its heavy burden of presenting substantial evidence that the relevant public primarily understands FISH FRY PRODUCTS to mean "marinades, sauces, and spices." ................... 13

    i.    Category 1: Fish Fry as Meal, Also Mentioning Marinade, Sauce, or Spice ....................................................... 14

    ii.    Category 2: Recipes Using the Words "fish fry" and Referencing a marinade, sauce, or spice ................................ 15

    iii.    Category 3: evidence referencing fried fish and a marinade, a sauce, or a spice ..................................................... 17

II.    The Board incorrectly determined that FISH FRY PRODUCTS had not acquired distinctiveness. ................................................................. 19

a.    The Board committed legal error when it did not weigh the totality of Appellant's evidence of acquired distinctiveness and instead examined each piece of evidence individually. .................................. 20

b.    The Board's finding that FISH FRY PRODUCTS has not acquired distinctiveness is in violation of the "reasoned decisionmaking" doctrine under the Administrative Procedure Act. ............................ 22

c.    The Board committed clear error when it failed to consider Appellant's six incontestable registrations because of a disclaimer in three of those registrations. ............................................... 26

CONCLUSION ........................................................................ 27

CERTIFICATE OF SERVICE ................................................... 27

CERTIFICATE OF COMPLIANCE .............................................. 27

ADDENDUM

# TABLE OF AUTHORITIES

**US SUPREME COURT CASES**

*Allentown Mack Sales and Service, Inc. v. National Labor Relations Bd.*, 522 U.S. 359 (1998) ................................................................................................ 6, 7

**FEDERAL CIRCUIT CASES**

*In re American Fertility Society* 188 F.3d 1341 (Fed. Cir. 1999)......... 12, 13, 14, 18

*In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341 (Fed. Cir. 2001) ..5, 7, 8, 12, 13

*G.H. Mumm & Cie v. Desnoes & Geddes, Ltd.*, 917 F.2d 1292 (Fed. Cir. 1990) .... 6

*In re Gould Paper Corp.*, 834 F.2d 1017 (Fed. Cir. 1987) ............................... 11, 12

*In re Hotels.com, L.P.*, 573 F.3d 1300 (Fed. Cir. 2009) ........................................ 18

*H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs*, 782 F.2d 987 (Fed. Cir. 1986)......................................................................................................... 12

*Magic Wand Inc. v. RDB Inc.,* 940 F.2d 638 (Fed. Cir. 1991) ................................ 8

*In re Majestic Distilling Co.*, 315 F.3d 1311 (Fed. Cir. 2003) .......................... 6, 13

*In re Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 828 F.2d 1567 (Fed. Cir. 1987).......................................................................................................... 8, 12

*In re Nett Designs, Inc.*, 236 F.3d 1339 (Fed. Cir. 2003) ....................................... 6

*In re Pacer Tech.*, 338 F.3d 1348 (Fed. Cir. 2003).................................................. 6

*In re SANG-SU Lee*, 277 F. 3d 1338 (Fed. Cir. 2002) ......................................... 6, 7

*In re Steelbuilding.com*, 415 F.3d 1293 (Fed Cir. 2005) ........................9, 10, 11, 21

*Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572 (Fed Cir. 1988)........... 19

## OTHER FEDERAL APPELLATE CASES

*Ty, Inc. v. Softbelly's Inc.*, 353 F.3d 528 (7th Cir. 2003)........................................... 8

## TTAB DECISIONS

*In re DNI Holdings, Ltd.*, 77 U.S.P.Q.2d 1435 (TTAB 2005).................................... 8

*Kellogg Company v. General Mills, Inc.*, 82 U.S.P.Q.2d 1766 (TTAB 2007) 21, 22,

    23, 24, 25, 26

*In re Thomas H. Wilson*, 57 U.S.P.Q. 1863 (TTAB 2001) .................................7, 25

*In re Trek 2000 International Ltd.*, 97 U.S.P.Q.2d 1106 (TTAB 2010)............. 8, 18

*In re Wm. B. Coleman Co.*, 93 U.S.P.Q.2d 2019 (TTAB 2010) ............................. 12

## STATUTES

5 U.S.C. § 706(2)(E)..................................................................................................... 6

15 U.S.C. § 1052(e)..................................................................................................... 19

15 U.S.C. § 1056(b)..................................................................................................... 26

## OTHER AUTHORITIES

TMEP § 1212 .............................................................................................................. 19

## STATEMENT OF RELATED CASES

(1)    Other than the Trademark Trial and Appeal Board proceeding from which this appeal is taken, this case has not previously been before this Court or any other court.

(2)    There are no cases that are pending in this or any other court which undersigned counsel believes will directly affect or be directly affected by this Court's decision in this appeal. Out of an abundance of caution, undersigned counsel wishes to make the Court aware of the following matters which involve similar marks belonging to Louisiana Fish Fry Products, Ltd., albeit for different goods:

    a.    Louisiana Fish Fry Products, Ltd. v. Bruce Foods Corporation, Middle District of Louisiana, 3:11-cv-557-JJB-SCR;

    b.    Bruce Foods Corporation v. Louisiana Fish Fry Products, Ltd., Trademark Trial and Appeal Board, Cancellation No. 92057090;

    c.    Louisiana Fish Fry Products, Ltd. v. Charles O. Corry, Middle District of Florida, 3:07-cv-1224-J-33TEM (terminated via consent decree).

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1295. Appellate jurisdiction is based upon a timely appeal from a decision of the Trademark Trial and Appeal Board dated May 24, 2013.

1

## STATEMENT OF THE ISSUES

(1)    Whether the Trademark Trial and Appeal Board applied the proper genericness standard.

(2)    Whether the Trademark Trial and Appeal Board met its burden of establishing genericness by clear evidence.

(3)    Whether the Trademark Trial and Appeal Board correctly determined that FISH FRY PRODUCTS has not acquired distinctiveness under Section 2(f) of the Lanham Act.

## STATEMENT OF THE CASE

This case is an appeal from a May 24, 2013, Trademark Trial and Appeal Board decision affirming a United States Patent and Trademark Office (PTO) refusal to register Appellant's mark due to a disclaimer requirement for FISH FRY PRODUCTS on grounds that FISH FRY PRODUCTS is generic for the goods in the present application, or alternatively, that FISH FRY PRODUCTS is merely descriptive of those goods and that FISH FRY PRODUCTS has not acquired distinctiveness.

## STATEMENT OF FACTS

In 1982, Appellant began using the mark LOUISIANA FISH FRY PRODUCTS in connection with batter mix. [A486] Appellant expanded its use of this mark to many other goods. Appellant applied for and obtained no less than six

federal registrations for LOUISIANA FISH FRY PRODUCTS and related logos as used with a variety of goods. [A482-A487]

On August 31, 2009, Appellant filed a trademark application for "Est. 1982 Louisiana Fish Fry Products Bring the Taste of Louisiana Home!" and design under 15 U.S.C. § 1051(a). [A35] The application's identification of goods and services reads: "Marinade; Sauce mixes, namely, barbecue shrimp sauce mix; Remoulade dressing; Cocktail sauce, Seafood sauce; Tartar sauce; Gumbo filé; and Cayenne pepper." [A36] Appellant's date of first use for the listed goods is at least as early as January 2002. [A36]

The PTO initially required Appellant to disclaim FISH FRY PRODUCTS as merely descriptive of a purpose or use and the nature of the goods. [A63] In response, Appellant contended that while FISH FRY PRODUCTS may be descriptive of batter mix, batter mix is not one of the goods listed in the application and that FISH FRY PRODUCTS is not descriptive of those goods. In the alternative, Appellant asserted that FISH FRY PRODUCTS had acquired distinctiveness.

The PTO issued another disclaimer requirement for FISH FRY PRODUCTS on the grounds that this portion of the mark was merely descriptive of a purpose or use and the nature of Appellant's goods. [A124]

Appellant responded, traversing the disclaimer requirement and submitting evidence of acquired distinctiveness, including the declaration of its president and its prior registrations. [A247]

In yet another action, the PTO rejected the Appellant's acquired distinctiveness evidence and added a new ground for its disclaimer requirement, namely that FISH FRY PRODUCTS "appears to be generic in the context of Appellant's goods." [A264] Appellant steadfastly contested the PTO's assertion that FISH FRY PRODUCTS was generic for the goods in question and presented evidence of Appellant's use of the mark in commerce for over thirty years, millions of dollars in sales, market share data, and advertising expenditures in numerous office action responses[1]. During prosecution, no evidence was produced showing use of FISH FRY PRODUCTS by any third party. Despite the foregoing, Appellant failed to persuade the examiner to withdraw her disclaimer requirement, and Appellant eventually appealed to the Trademark Trial and Appeal Board. [A547-A551] The Board affirmed the examiner's determination that FISH FRY PRODUCTS is generic for the goods in Appellant's application and that FISH FRY PRODUCTS had not acquired distinctiveness in an opinion mailed May 24, 2013. [A1-A30] Appellant requested that the Board amend its opinion on June 6, 2013. The Board granted Appellant's request and issued an amended decision on

---

[1] [A454-A457]

4

June 20, 2013. [A1-A2] Appellant then timely filed its appeal of that decision with this Court on July 22, 2013. [A999-A1000]

## SUMMARY OF THE ARGUMENT

The Trademark Trial and Appeal Board ("TTAB") erred in finding FISH FRY PRODUCTS generic for "marinade; sauce mixes, namely barbecue shrimp sauce mix; remoulade dressing; cocktail sauce; seafood sauce; tartar sauce; gumbo filé; cayenne pepper" because the TTAB utilized the incorrect genus in its genericness determination and failed to meet its burden of proving by clear evidence that the relevant purchasing public primarily uses FISH FRY PRODUCTS to refer to the goods in Appellant's application or primarily understands FISH FRY PRODUCTS to refer to those goods.

The TTAB also erred in applying a higher standard for establishing acquired distinctiveness than that set forth in its precedential opinions and by not according proper weight to the totality of Appellant's evidence of acquired distinctiveness.

## APPLICABLE STANDARD OF REVIEW

The United States Court of Appeals for the Federal Circuit reviews the TTAB's conclusions of law *de novo* and reviews the TTAB's findings of fact to ensure that those findings of fact are supported by substantial evidence as required by the Administrative Procedure Act. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001); 5 U.S.C. § 706(2)(E). The TTAB's finding of

genericness is a finding of fact to be reviewed for substantial evidence. See *In re Nett Designs, Inc.*, 236 F.3d 1339, 1341 (Fed. Cir. 2003). Substantial evidence requires "more than a mere scintilla" of evidence. *In re Pacer Tech.*, 338 F.3d 1348, 1349 (Fed. Cir. 2003). A determination that a finding of fact is supported by substantial evidence requires this Court to find that, taking the entire record into account, a reasonable person might find that the evidentiary record supports the TTAB's conclusion. *In re Majestic Distilling Co.*, 315 F.3d 1311, 1314 (Fed. Cir. 2003). Whether a mark has acquired distinctiveness is a question of fact to be reviewed under the clearly erroneous standard. *G.H. Mumm & Cie v. Desnoes & Geddes, Ltd.*, 917 F.2d 1292, 1294 (Fed. Cir. 1990).

Further, this Court recognizes and applies the "reasoned decisionmaking" doctrine:

> The Administrative Procedure Act, which governs administrative agencies and related judicial review, establishes the scheme of 'reasoned decisionmaking.' Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational.

*In re SANG-SU Lee*, 277 F. 3d 1338, 1342 (Fed. Cir. 2002), citing *Allentown Mack Sales and Service, Inc. v. National Labor Relations Bd.*, 522 U.S. 359, 374 (1998). This Court has found that omission of a relevant factor required by precedent is both legal error and arbitrary agency action in violation of the "reasoned decisionmaking" scheme under the Administrative Procedure Act. *LEE* at 1344.

6

Additionally, the "reasoned decisionmaking" doctrine prohibits an agency from adopting significantly inconsistent policies that result in the creation of conflicting lines of precedent governing the identical situation. *In re Thomas H. Wilson*, 57 U.S.P.Q. 1863, 1871 (TTAB 2001). In the same vein, this Court has determined that "reasoned decisionmaking" demands that agencies, such as the Trademark Trial and Appeal Board of the Patent and Trademark Office, must apply in fact the clearly understood legal standards that it enunciates in principle. *LEE* at 1344; citing *Allentown Mack* at 376.

## ARGUMENT

**I.** **The PTO incorrectly determined that FISH FRY PRODUCTS is generic because the relevant purchasing public does not primarily refer to "marinade; sauce mixes, namely barbecue shrimp sauce mix; remoulade dressing; cocktail sauce; seafood sauce; tartar sauce; gumbo filé; cayenne pepper" as FISH FRY PRODUCTS or understand the primary meaning of FISH FRY PRODUCTS to be a reference to those goods.**

**a.** **The PTO had the burden of proving genericness by clear evidence.**

Generic terms are terms that the relevant purchasing public understands or uses primarily as the common or class name for the goods and/or services. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001). When determining genericness, the Patent and Trademark Office ("PTO") must apply a two part test. First, the Office must determine the correct genus for the goods or services at issue. Second, the Office must determine if the term sought to be registered is understood by the public primarily to refer to that genus of goods or

services. *Id.* at 1359. Where the PTO contends that a proposed mark is generic, it bears the burden of establishing, by "clear evidence," that the mark, as a whole is generic. *In re Merrill Lynch, Pierce, Fenner, and Smith, Inc.*, 828 F.2d 1567, 1569 (Fed. Cir. 1987).

To determine that a trademark is generic and thus pitch it into the public domain is a fateful step. *Ty, Inc. v. Softbelly's Inc.*, 353 F.3d 528, 531 (7th Cir. 2003); *In re Trek 2000 International Ltd.*, 97 U.S.P.Q.2d 1106, 1108 (TTAB 2010). Accordingly, doubt on the issue of genericness is resolved in favor of the applicant. *In re DNI Holdings, Ltd.*, 77 USPQ2d 1435, 1437 (TTAB 2005).

**b.** **The PTO incorrectly categorized the genus of the goods at issue as "marinades, sauces, and spices *used for fish fries*," instead of the correct genus, "marinades, sauces, and spices."**

In its decision, the Board correctly determined that the proper genus for Appellant's goods is "marinades, sauces, and spices." In assessing the genus, the Board properly applied this Court's rule that the genericness inquiry focuses on the description of goods set forth in the application. [A9; citing *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 19 USPQ 1551, 1552 (Fed. Cir. 1991)]

After making a proper genus determination, the Board jettisoned its initial genus definition in favor of "marinades, sauces and spices <u>used for fish fries.</u>" [A10, emphasis added]. Appellant's goods and services description includes no such use limitation, and the Board provided no explanation for its change.

Determination of the correct genus is not an academic exercise. The PTO must use the properly determined genus to assess whether the relevant public primarily understands the allegedly generic phrase to refer to the genus. The PTO cannot properly determine the genus and then discard that determination in its assessment of how the public uses or understands the phrase. Yet, that is precisely what the Board did here. After initially making a proper determination of the genus of Appellant's goods, the Board never again referred to this genus in its analysis, instead referring to the improperly narrowed description of the genus: marinades, sauces, and spices *used for fish fries*. This omission rendered the Board's entire genericness analysis circular and improper.

This Court faced a similar misunderstanding of genus by the Board in *In re Steelbuilding.com*, 415 F.3d 1293, 1298 (Fed Cir. 2005). In *Steelbuilding.com,* the Board's failure to adopt a genus definition that encompassed the full scope of the applicant's services was found to be sufficient to warrant reversal of the Board's genericness finding. *Id.*, at 1298. Even though the Board adopted a genus definition that included "the significant, if not primary feature of the applicant's service," the definition was improper because it omitted other aspects of the applicant's service, namely the interactive design features provided by the applicant in that case. *Steelbuilding.com* at 1298.

9

By improperly narrowing the genus description here, the PTO essentially short-circuited its genericness analysis. The PTO did not attempt to show that FISH FRY PRODUCTS was generic for the genus of Appellant's goods. The PTO sought to show that FISH FRY PRODUCTS was generic for some smaller sub-set of goods – only those used on or with fried fish. By the same reasoning, the PTO could determine genericness of Ford Motor Co.'s RANGER® mark, not by considering the mark in connection with all motor trucks, but with motor trucks *used by rangers*. Similarly, the PTO could assess the genericness of BUCK®, not as used with hunting knives, but as used with hunting knives *used to skin deer*.

By adding qualifiers to the genus not supported in the goods and services description of the application, the PTO improperly conflates genericness with descriptiveness and suggestiveness. Most marks have an association with the goods and services with which they are used. On the familiar continuum of generic/descriptive/suggestive/arbitrary-fanciful marks, only the arbitrary-fanciful marks will have no connection with their goods and services. If that association may be imported, at will, by the PTO into the genus definition without regard to the goods and services description in the application, many otherwise protectable marks could be mis-classified as generic.

As in *Steelbuilding.com*, the Board here utilized a genus definition that encompasses only a sub-set of the Applicant's goods. Where this case differs from

*Steelbuildings.com* is that the Board first properly identified the genus and then declined to use that definition for the rest of its genericness analysis. The requirements of *Steelbuilding.com* cannot be satisfied by correctly identifying the genus and then ignoring that determination. The Patent and Trademark Office cannot carry its heavy burden of showing genericness by clear evidence if it fails to use the proper genus in assessing genericness. The Board failed to do so here, and its holding of genericness should be vacated.

> **c. The PTO committed legal error when it incorrectly applied the *Gould* test in its attempt to show that the relevant purchasing public primarily understands FISH FRY PRODUCTS to mean "marinades, sauces, and spices."**

The Board found that there was clear evidence that the "relevant public, when it considers FISH FRY PRODUCTS in conjunction with marinades, sauces, and spices, readily understands the term to identify a type of marinade, sauce, or spice used for fish fries." [A8] However, the Board did <u>not</u> determine that the entire phrase FISH FRY PRODUCTS had any primary meaning to the relevant public. Rather, the Board relied upon *In re Gould Paper Corp.*, 834 F.2d 1017 (Fed. Cir. 1987) for the determination that FISH FRY and PRODUCTS are separate terms which retain their alleged generic significance when joined together to form a compound. [A19; citing *In re Wm. B. Coleman Co.*, 93 USPQ2d 2019, 2025 (TTAB 2010), quoting *In re Gould Paper Corp.*, 834 F.2d 1017]

11

In *In re American Fertility Society,* 188 F.3d 1341(Fed. Cir. 1999), this Court rejected the comparison of SOCIETY FOR REPRODUCTIVE MEDICINE to the compound term, SCREENWIPE.[2] *American Fertility Society* held that the proper analysis is that used for FIRE CHIEF[3] and CASH BROKERAGE ACCOUNT[4] because the PTO failed to produce evidence that the entire phrase was used by the relevant public to refer to the class of services provided by the applicant. *Id.* at 1348. Where the proposed mark is a phrase, the PTO cannot simply cite definitions and generic uses of the constituent terms of a mark; it must conduct an inquiry into the meaning of the disputed phrase as a whole. *In re Dial-A-Mattress Operating Corp.,* 240 F.3d 1341, 1345 (Fed. Cir. 2001); citing *American Fertility Society* at 1347.

This Court has expressly stated that "*Gould* is limited, on its facts, language, and holding, to compound terms formed by the union of words." *American Fertility Society* at 1348; *Dial-A-Mattress* at 1345. It is legally erroneous to apply *Gould* to phrases consisting of multiple terms which are not joined in any sense other than appearing in a phrase. *American Fertility Society,* at 1348.

---

[2] See *In re Gould Paper Corp.,* 834 F.2d 1017 (Fed. Cir. 1987)
[3] *H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs,* 782 F.2d 987 (Fed. Cir. 1986).
[4] *In re Merrill Lynch, Pierce, Fenner, and Smith, Inc.,* 828 F.2d 1567 (Fed. Cir. 1987).

FISH FRY PRODUCTS is obviously not a compound term. It is three separate words. These words are not joined in any sense, beyond the fact that they appear in a phrase.

Here the PTO has presented no evidence that the relevant public uses the disputed phrase at all, nor has it presented any evidence of how the public understands the entire phrase. This failure is fatal to the Board's genericness determination, and it should be vacated on these grounds as well.

> **d.** **The Board did not meet its heavy burden of presenting substantial evidence that the relevant public primarily understands FISH FRY PRODUCTS to mean "marinades, sauces, and spices."**

This Court examines the Board's decisions to ensure that they are supported by substantial evidence. *In re Dial-A-Mattress Operating Corp.*, 240 F.3d 1341, 1344 (Fed. Cir. 2001). A determination that a finding of fact is supported by substantial evidence requires this Court to find that, taking the entire record into account, a reasonable person might find that the evidentiary record supports the TTAB's conclusion. *In re Majestic Distilling Co.*, 315 F.3d 1311, 1314 (Fed. Cir. 2003). When the mark or portion of the mark in question is a phrase, this Court has found that evidence related to the constituent terms of the phrase does not satisfy the PTO's heavy burden of proving genericness by clear evidence. *American Fertility Society* at 1348.

Looking now to the evidence presented by the Board, the record is entirely devoid of even one reference among hundreds cited during prosecution using the entire phrase FISH FRY PRODUCTS, except those referencing Appellant's goods. In fact, other than Appellant's own website, no evidence was presented that shows the use of FISH FRY in the same document as "PRODUCTS," a factor this Court has previously acknowledged as weighing against a finding of genericness. *American Fertility Society*, at 1348.

The Board presented dictionary definitions of "fish fry" and "products." [A10] Appellant does not dispute the definitions provided by the Board, though as discussed above, Appellant takes issue with the Board's reference to the phrase components, rather than to the phrase as a whole.

The bulk of the PTO's evidence consisted of dozens of publications including newspaper articles, websites, and recipes. The PTO's evidence can be grouped into three categories: publications discussing a meal designated as a "fish fry" where a marinade, sauce or spice is also discussed; recipes that use the words "fish fry" and which include reference to a marinade, sauce or spice; and references which neither use "fish fry" nor "products" but describe fried fish and mention a marinade, sauce, or spice.

### i. Category 1: Fish Fry as Meal, Also Mentioning Marinade, Sauce, or Spice

14

As evidence that FISH FRY PRODUCTS is generic for the goods in Appellant's application," the examiner cited several articles that use the term "fish fry" to refer to a meal. The cited articles also make mention of marinades, sauces or spices. Some examples follow:

> Where to cast your line for a different bit of fish… So, generally speaking our search for fish fries with a twist found that your fried fish is safe in Milwaukee-thought (sic) it sometimes gets updated and redefined with spices and marinades.

[A11, Milwaukee Journal Sentinel, March 3, 2000]

> [Upon seeing] people in the grocery store buying jars of cocktail sauce. I like to assume that they have gotten back from an exciting deep sea fishing trip and are cooking up their fresh catch and having a fish fry.

[A14, "*IHavetheRecipeForThat.com*,"]

These articles show nothing more than the undisputed fact that the phrase "fish fry" can be used to refer to a meal where fried fish is served and that sauces and spices can be served at such meals. They do not show that the public has any primary understanding of the phrase FISH FRY PRODUCTS or that anyone, anywhere would, upon hearing the phrase FISH FRY PRODUCTS, understand the phrase to refer to marinades, sauces or spices.

  **ii. Category 2: Recipes Using the Words "fish fry" and Referencing a marinade, sauce, or spice**

The Board lists several recipes using the term "fish fry" with either a marinade, a sauce, or a spice described in the recipe or its accompanying text, for example:

RachelRayShow.com with just the title, "Fish Fry with Tartar Sauce," without any further context or information. [A14]

A recipe for "Fried Fish Marinated in Garlic, Vinegar, Oregano, and Cumin" from the October 2002 issue of *Bon Appetit* magazine:

> Generally this dish is served in Andalusia as a part of a mixed fish fry, but it's wonderful on it's [sic] own. The marinade makes the fish flavorful and succulent. [A14]

The Board's recipes show no more than the articles discussed above. "Fish fry" can refer to a meal where fried fish is served. Marinades, sauces, and spices appear at such meals. Again, none of the recipes makes use of the phrase at issue, FISH FRY PRODUCTS. None of them answer the question: how would a member of the relevant public primarily understand the phrase FISH FRY PRODUCTS?

The fact is that there is no such understanding. Consider a shopping list stating simply "pick up fish fry products tonight." A writer expecting such a list to elicit a purchase of marinades, sauces and spices would almost certainly be disappointed, because the public has no understanding of the phrase FISH FRY

16

PRODUCTS. Most importantly, neither the Board's articles nor its recipes evidence any such understanding on the part of the public.

### iii. Category 3: evidence referencing fried fish and a marinade, a sauce, or a spice

The Board's final category of evidence is both the weakest and the most voluminous. Again, the phrase FISH FRY PRODUCTS never appears. However, now even the phrase FISH FRY is missing. Rather, we see only references to some variation of fried fish in the vicinity of a marinade, a sauce, or a spice:

A wikipedia.com entry which states that remoulade

> is now more often used as an accompaniment to seafood dishes, especially pan-fried breaded fish filets; [A14]

A "Buttermilk Marinated Fried Catfish Recipe" posted on the Cookingfishmonger.com website [A15]; and

an article entitled "How to Make a Dipping Sauce for Fish and Seafood" posted on the eHow.com website which recommends the sauce with baked, broiled or fried fish. [A15]

The Category 3 evidence shows nothing at all of relevance. That people eat sauces and spices with fried fish is not disputed. The dispute is whether consumers primarily understand FISH FRY PRODUCTS to refer to sauces, spices and marinades. Presenting mountains of evidence showing that sauces are, in fact,

17

eaten with fried fish does nothing to answer the relevant question: how does the public understand FISH FRY PRODUCTS.

None of the examples cited by the Board in any of the three categories show that FISH FRY PRODUCTS has any meaning or use to the relevant public. This absence of evidence alone is potentially sufficient to warrant overturning the Board's genericness decision. See *American Fertility Society* at 1348; *Trek 2000 International* at 1109. Further, the fact that the record is devoid of a single competitor using the term evidences the lack of a competitive need for the phrase FISH FRY PRODUCTS. *Trek 2000 International* at 1113; *In re Hotels.com, L.P.*, 573 F.3d 1300, 1304 (Fed. Cir. 2009).

What the PTO's evidence shows is that FISH FRY can refer to a meal where fried fish is served. Appellant does not dispute this fact. However, Appellant is not seeking to register its mark with fried fish, and it hardly follows from the PTO's evidence that the public understands FISH FRY PRODUCTS to *primarily* refer to anything and everything that may be served or used at such meals.

Such a dramatic leap would imply that FISH FRY PRODUCTS is generic not only for Appellant's goods, but also for a whole host of things commonly served or used at fish fries, from beer and soft drinks, to French fries, to paper plates and even garbage liners. That a phrase for which there is no evidence of actual use by any third parties, let alone competitors, could be generic for such a

18

variety of goods would be an extraordinary conclusion. Extraordinary conclusions require extraordinary evidence. The PTO has presented no evidence at all, let alone extraordinary evidence, of the public's primary understanding of FISH FRY PRODUCTS. Most importantly, it has not established that FISH FRY PRODUCTS is primarily understood by the public to refer to marinades, sauces, and spices.

## II.  The Board incorrectly determined that FISH FRY PRODUCTS had not acquired distinctiveness.

In the event that FISH FRY PRODUCTS is deemed descriptive for "marinade; sauce mixes, namely barbecue shrimp sauce mix; remoulade dressing; cocktail sauce; seafood sauce; tartar sauce; gumbo filé; cayenne pepper," the evidence presented below shows that FISH FRY PRODUCTS has acquired distinctiveness under Section 2(f) of the Lanham Act. Acquired distinctiveness allows for registration of a mark which would otherwise not be registrable under 15 U.S.C. § 1052(e). *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572 (Fed Cir. 1988); TMEP § 1212.

Acquired distinctiveness can be shown by: a claim of ownership of one or more prior registrations on the Principal Register of the same mark for goods or services that are the same as or related to those named in the pending application, a statement verified by the applicant that the mark has become distinctive of the applicant's goods or services by reason of substantially exclusive and continuous use in commerce by the applicant for the five years before the date when the claim

of distinctiveness is made, and/or actual evidence of acquired distinctiveness. TMEP § 1212.

> **a.** **The Board committed legal error when it did not weigh the totality of Appellant's evidence of acquired distinctiveness and instead examined each piece of evidence individually.**

The TTAB found that Appellant failed to meet its burden of showing that FISH FRY PRODUCTS had acquired distinctiveness despite the plethora of evidence submitted by Appellant proving that FISH FRY PRODUCTS has acquired distinctiveness. Appellant contends that the declaration of its President, standing alone, attesting to over thirty years of continuous and substantial use is *prima facie* evidence that FISH FRY PRODUCTS has acquired distinctiveness for the goods in the present application.

In accordance with the PTO's determination that additional evidence of acquired distinctiveness was necessary, Appellant provided not only six incontestable registrations for the same or similar mark on the same or related goods but also evidence of over one hundred million dollars ($100,000,000) of sales and over two million dollars ($2,000,000) in advertising expenditures. [A464-A467]

In analyzing Appellant's evidence, the Board incorrectly examined each piece of evidence in a vacuum and found that each piece of evidence, standing alone, was not *prima facie* evidence that FISH FRY PRODUCTS had acquired

distinctiveness. However, this analytical method is clearly erroneous because it considers the effect of the various evidentiary items in isolation, rather than as a whole. As this Court has articulated, a determination of secondary meaning examines all of the circumstances involving use of the mark. *In re Steelbuilding.com*, at 1300.

The Board has demonstrated an appreciation of its obligation to consider evidence of acquired distinctiveness as whole in previous cases. In *Kellogg Company v. General Mills, Inc.*, faced with a multitude of evidence of acquired distinctiveness, the Board recognized that it was the totality of the evidence that was to be considered:

> the examining attorney found the evidence in its entirety
> supported such a conclusion [of acquired distinctiveness],
> and we agree

*Kellogg*, 82 U.S.P.Q.2d 1766, 1771 (TTAB 2007).

The Board committed clear error when it failed to consider the cumulative effect of Appellant's declaration of over thirty years use together with its six incontestable registrations for the same mark; its evidence of over one hundred million dollars ($100,000,000) in sales; and over two million dollars ($2,000,000) in advertising expenditures in establishing that FISH FRY PRODUCTS has acquired distinctiveness. Therefore, Appellant requests that this Court reverse the Board's determination of lack of acquired distinctiveness and remand for a

21

decision that FISH FRY PRODUCTS has acquired distinctiveness in light of the totality of the evidence.

### b. The Board's finding that FISH FRY PRODUCTS has not acquired distinctiveness is in violation of the "reasoned decisionmaking" doctrine under the Administrative Procedure Act.

The Board failed to follow the doctrine of "reasoned decisionmaking" when it did not follow its precedential decision in *Kellogg Company v. General Mills, Inc.*, 82 USPQ2d 1766 (TTAB 2007).

The Board stated that LOUISIANA FISH FRY PRODUCTS, as displayed in Appellant's mark, does not comprise a unitary term. Therefore, the TTAB found that FISH FRY PRODUCTS must be disclaimed unless it is found that the term has acquired distinctiveness separate and apart from LOUISIANA. [A29] In support of this conclusion, the Board cited *Kellogg Company v. General Mills, Inc.*, 82 USPQ2d 1766, 1772 (TTAB 2007).

In *Kellogg*, the Board was faced with a situation nearly identical to the present matter. The applicant filed a trademark application for CINNAMON TOAST CRUNCH for "cereal derived ready-to-eat bar" in Class 30. *Kellogg*, at 1767. The applicant claimed that the CINNAMON TOAST portion of its mark had acquired distinctiveness under Section 2(f) of the Lanham Act. *Id.*

In support of its claim that CINNAMON TOAST had acquired distinctiveness under Section 2(f), the applicant presented evidence nearly identical

to Appellant's evidence of acquired distinctiveness, namely: two incontestable trademark registrations for related goods in which CINNAMON TOAST had previously been disclaimed, a declaration by Applicant's trademark counsel that CINNAMON TOAST CRUNCH for breakfast cereal had been in use for sixteen (16) years and that sales of CINNAMON TOAST CRUNCH breakfast cereal totaled more than $650 million ($650,000,000) and advertising expenditures totaled $46 million ($46,000,000) over the previous five years. *Kellogg* at 1768.

The Board found that CINNAMON TOAST had acquired distinctiveness in light of the above described evidence. In reaching its conclusion, the Board stated that CINNAMON TOAST was separable from the mark, CINNAMON TOAST CRUNCH, as a whole but stated that Applicant's showing of acquired distinctiveness with respect to CINNAMON TOAST CRUNCH was sufficient to support Applicant's partial claim of acquired distinctiveness as to CINNAMON TOAST. *Kellogg* at 1771-72.

Despite the above decision's precedential designation, the Board erroneously reached the exact opposite conclusion in the present matter even though the facts are nearly identical. In both instances, the applicants claimed acquired distinctiveness under Section 2(f) for a portion of a previously registered mark. In both instances, the applicants presented evidence in the form of declarations of use much longer than the required five years. In both instances, the applicants

presented incontestable registrations as evidence of length of time the relevant portion of the mark had been in use.[5] In both instances, the applicants presented evidence of over one hundred million dollars ($100,000,000) in sales and millions of dollars of advertising for the mark. In both applications, the relevant goods are food products.

In *Kellogg*, the Board found that the applicant provided prima facie evidence that CINNAMON TOAST acquired distinctiveness based on its showing that CINNAMON TOAST CRUNCH had acquired distinctiveness. Yet, when presented with nearly identical evidence, the Board erroneously failed to follow its own precedent and declared that FISH FRY PRODUCTS had not acquired distinctiveness despite the evidence presented with respect to LOUISIANA FISH FRY PRODUCTS.

The Board's decision in this case violated the "reasoned decisionmaking" doctrine in two ways. First, the Board failed to consider Appellant's evidence of acquired distinctiveness in its entirety, as it did in *Kellogg*. *Kellogg* at 1771. This error almost certainly explains the divergent outcomes despite the virtually indistinguishable fact patterns.

---

[5] In *Kellogg*, the term in question had been disclaimed in the prior registrations submitted in evidence. That is only partially true in the present case. In three of Appellant's prior registrations FISH FRY PRODUCTS was disclaimed. However, in registrations 2,801,892, 2,827,058, and 2,827,057, FISH FRY is not disclaimed. [A 482, A483, A485]. In this regard, Appellant's evidence is <u>stronger</u> than that of the applicant in *Kellogg*.

Second, *Kellogg* set a threshold for what was sufficient to establish a *prima facie* showing of acquired distinctiveness. The "reasoned decisionmaking" doctrine prohibits an agency from adopting significantly inconsistent policies that result in the creation of conflicting lines of precedent governing identical situations. *In re Thomas H. Wilson*, 57 U.S.P.Q. 1863, 1871 (TTAB 2001). The "reasoned decisionmaking" doctrine requires agencies to follow established precedent to avoid inconsistent decisions in the presence of fully adjudicated precedent by an agency's Administrative Law Judges or equivalent policy-making and adjudicative personnel. *Id.* Faced with evidence of acquired distinctiveness that was even stronger than that which crossed the threshold of acquired distinctiveness in *Kellogg*, the Board violated the "reasoned decisionmaking" doctrine when it applied a different standard of establishing acquired distinctiveness to Appellant.

The Board designates very few of its decisions as citable precedent. The purpose of those precedential decisions is to provide parameters of operation for the Patent and Trademark Office and the public it serves. If the Board is allowed to ignore its own precedent in the present matter, then the very situation prohibited by the "reasoned decisionmaking" doctrine will occur, namely conflicting lines of precedent will be established for identical situations. This Court has determined that the Board must apply its own standards, and Appellant asks this Court to

remand this decision to the Board with instructions to follow its own precedential decision in *Kellogg*.

    **c.**    **The Board committed clear error when it failed to consider Appellant's six incontestable registrations because of a disclaimer in three of those registrations.**

When examining Appellant's six incontestable registrations, all of which include the phrase FISH FRY PRODUCTS, the Board determined that those registrations were not sufficient evidence of acquired distinctiveness. [A24-A25] As one of its reasons for the above finding, the Board stated that Appellant disclaimed FISH FRY PRODUCTS in three of the six registrations. This pronouncement ignores the fact that Appellant owns three incontestable registrations for similar, and in some cases identical, goods in which FISH FRY is not disclaimed. [A482, A483, A485]

Rather than give weight to Appellant's incontestable registrations which included no disclaimer, the Board improperly held the registrations in which FISH FRY PRODUCTS was disclaimed against Appellant. This prejudice is in direct conflict with the Lanham Act, Section 6(b) which provides:

> No disclaimer … shall prejudice or affect the applicant's or registrant's rights then existing or thereafter arising in the disclaimed matter of his right of registration on another application if the disclaimed matter be or shall have become distinctive of his goods or services.

15 U.S.C. § 1056(b).

To the extent that FISH FRY PRODUCTS is descriptive of the goods in Appellant's application, Appellant submitted substantial evidence that FISH FRY PRODUCTS has become distinctive of those goods: no less than three incontestable registrations for very similar marks for similar goods with no disclaimer of the phrase in question; millions of dollars in sales under the marks; millions of dollars in advertising expended in connection with the marks. [A482, A483, A485]  Furthermore, there is no evidence in the record of anyone other than Appellant using the phrase FISH FRY PRODUCTS in connection with marinades, sauces, and spices. Appellant believes that many of these evidentiary factors are sufficient, standing alone, to establish that FISH FRY PRODUCTS has acquired distinctiveness under § 2(f). Further, it is the Board's failure to follow its own precedent and the Board's failure to consider the evidentiary effect of the *totality* of this evidence that warrants reversal.

## CONCLUSION

For the foregoing reasons, FISH FRY PRODUCTS is not generic for "Marinade; Sauce mixes, namely, barbecue shrimp sauce mix; Remoulade dressing; Cocktail sauce, Seafood sauce; Tartar sauce; Gumbo filé; and Cayenne pepper." Further, the record explicitly shows that FISH FRY PRODUCTS, if deemed descriptive, has acquired distinctiveness. Therefore, this Court should

reverse the Board's decision and order that Appellant's application be published for opposition.

Respectfully submitted:

s/R. Bennett Ford, Jr/
R. Bennett Ford, Jr.
Alana O. Fernandez
**ROY, KIESEL, FORD, DOODY &
THURMON**
9100 Bluebonnet Centre Blvd.
Suite 100
P.O. Box 15928
Baton Rouge, LA  70895
(225) 927-9908
rbf@roykiesel.com

Attorneys for Appellant, Louisiana Fish Fry Products, Ltd.

## CERTIFICATE OF SERVICE

I, R. Bennett Ford, Jr., do hereby certify that a copy of Appellant's Brief is being served through this Court's electronic filing system on all counsel of record for the United States Patent and Trademark Office on this 4th day of November, 2013.

s/R. Bennett Ford, Jr./
R. Bennett Ford, Jr.


## CERTIFICATE OF COMPLIANCE

I, R. Bennett Ford, Jr., do hereby certify that Appellant's Brief complies with the requirements of Federal Rule of Appellate Procedure 32(a)(7) and in particular with the type volume limitation in that the Brief contains 6,001 words.


s/R. Bennett Ford, Jr./
R. Bennett Ford, Jr.

13-1619

---

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

---

LOUISIANA FISH FRY PRODUCTS, LTD.,

Petitioner,

v.

DEPARTMENT OF COMMERCE,

Respondent.

---

PETITION FOR REVIEW FROM TRADEMARK TRIAL AND APPEAL
BOARD IN 77816809

---

ADDENDUM

R. Bennett Ford, Jr.
Alana O. Fernandez
**ROY, KIESEL, FORD, DOODY
& THURMON**
9100 Bluebonnet Centre Blvd.
Suite 100
P.O. Box 15928
Baton Rouge, LA  70895
(225) 927-9908
rbf@roykiesel.com

Attorneys for Petitioner

November 4, 2013

> THIS OPINION IS NOT A
> PRECEDENT OF THE TTAB

Mailed:
June 20, 2013

UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re Louisiana Fish Fry Products, Ltd.*

———

Serial No. 77816809

———

R. Bennett Ford, Jr. of Roy, Kiesel, Ford, Doody & Thurman for Louisiana Fish Fry Products, Ltd.

Amy L. Kertgate, Trademark Examining Attorney, Law Office 113 (Odette Bonnet, Managing Attorney).

———

Before Kuhlke, Bergsman and Lykos, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Louisiana Fish Fry Products, Ltd. ("applicant") has requested that the Board amend the decision issued May 24, 2013 by changing the following sentence on page 6 from "Thus, the commercial impression engendered by the mark is Louisiana style brand 'Fish Fry Products'" to "Thus, the commercial engendered by the mark is Louisiana brand 'Fish Fry Products.'" Applicant's request is granted. A copy of the decision as amended is attached.

Serial No. 77816809

Applicant's time to appeal remains as set by the May 24, 2013 decision pursuant to Section 21 of the Trademark Act of 1946, 15 U.S.C. §§ 1071(a)(2) and 1071(b)(1).

A000002

> THIS OPINION IS NOT A
> PRECEDENT OF THE TTAB

Mailed:
May 24, 2013

## UNITED STATES PATENT AND TRADEMARK OFFICE

———

Trademark Trial and Appeal Board

———

*In re Louisiana Fish Fry Products, Ltd.*

———

Serial No. 77816809

———

R. Bennett Ford, Jr. of Roy, Kiesel, Ford, Doody & Thurman for Louisiana Fish Fry Products, Ltd.

Amy L. Kertgate, Trademark Examining Attorney, Law Office 113 (Odette Bonnet, Managing Attorney).

———

Before Kuhlke, Bergsman and Lykos, Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Louisiana Fish Fry Products, Ltd. ("applicant") filed a use-based application to register on the Principal Register the mark LOUISIANA FISH FRY PRODUCTS BRING THE TASTE OF LOUISIANA HOME and design, shown below, for goods ultimately identified as "marinade; sauce mixes, namely, barbecue shrimp sauce mix; remoulade dressing; cocktail sauce, seafood sauce; tartar sauce; gumbo filé; and cayenne pepper," in Class 30.

Serial No. 77816809



Applicant disclaimed the exclusive right to use "EST. 1982" and claimed that LOUISIANA FISH FRY PRODUCTS and the pictorial representation of the State of Louisiana had acquired distinctiveness in accordance with Section 2(f) of the Trademark Act of 1946. Applicant also claimed ownership of the following registrations:

1.    Registration No. 2794015 on the Principal Register for the same mark as in the application at issue for "cajun blackened seasoning," in Class 30.[1] Applicant disclaimed the exclusive right to use "Fish Fry Products" and "Est. 1982" and with a claim of acquired distinctiveness pursuant to Section 2(f) in part as to the word "LOUISIANA" and the map of the State of Louisiana.

2.    Registration No. 2827057 on the Principal Register for the same mark as in the application at issue without the fleur de lis for "seasonings, namely, crawfish, crab and shrimp boil; mixes, namely, dirty rice mix consisting primarily of rice and also containing vegetables; etouffee mix consisting primarily of flour, seasonings, and also containing vegetables; gravy mix; gumbo mix consisting primarily of flour seasonings and also containing onions; jambalaya mix consisting

---

[1] Issued December 16, 2003; renewed.

A000004

Serial No. 77816809

primarily of packaged rice and spices; red beans and rice mix consisting primarily of rice, beans, seasoning, and also containing vegetables; shrimp creole mix consisting primarily of flour and seasonings and also containing vegetables; and cobbler mix consisting primarily of sugar, flour, leavening and spices," in Class 30.[2] Applicant disclaimed the exclusive right to use "Products" and "Est. 1982" and claimed acquired distinctiveness in part as to the word "LOUISIANA" and the map of the state of Louisiana.

    3.    Registration No. 2827571 on the Principal Register for the same mark as in the application at issue without the fleur de lis for "hush puppy mix, seasoned batter mixes, namely, fish fry, chicken fry, and shrimp fry, baking seasonings for chicken and fish," in Class 30.[3] Applicant disclaimed the exclusive right to use "Fish Fry Products" and "Est. 1982" and claimed acquired distinctiveness in part as to the word"LOUISIANA" and the map of the state of Louisiana.

During the prosecution of its application, applicant also claimed ownership of the following registrations:

    1.    Registration No. 2801892 for the mark LOUISIANA FISH FRY PRODUCTS, in standard character form, for *inter alia,* seasonings and sauces, in Class 30.[4] Applicant claimed that "Louisiana" had acquired distinctiveness and disclaimed the exclusive right to use "Products."

---

[2] Issued March 30, 2004; Sections 8 and 15 affidavits accepted and acknowledged.
[3] Issued March 30, 2004; Sections 8 and 15 affidavits accepted and acknowledged.
[4] Issued January 6, 2004; renewed.

A000005

Serial No. 77816809

2.     Registration No. 2827058 for the mark LOUISIANA FISH FRY PRODUCTS and design, shown below, for "cocktail sauce, tartar sauce, seafood sauce and remoulade dressing," in Class 30.[5]  Applicant claimed that "Louisiana" had acquired distinctiveness and disclaimed the exclusive right to use "Products."



The Trademark Examining Attorney accepted the Section 2(f) claim of acquired distinctiveness as to LOUISIANA and the map of Louisiana but refused registration on the grounds that the term "Fish Fry Products" engenders a separate commercial impression and must be disclaimed under Sections 2(e)(1) and 6 of the Trademark Act because the term "Fish Fry Products" as used by applicant is either generic or because it is merely descriptive and it has not acquired distinctiveness.

We consider the disclaimer requirement first.

A.     <u>Whether the term "Fish Fry Products" should be disclaimed under Sections 2(e)(1) and 6 of the Trademark Act?</u>

According to the Trademark Examining Attorney, "[a]pplicant has been required to enter a disclaimer of the term 'FISH FRY PRODUCTS' apart from the mark as shown because this term when used in connection with the goods in the

---

[5] Issued March 30, 2004; Sections 8 and 15 affidavits accepted and acknowledged.

A000006

Serial No. 77816809

application, is generic and therefore unregistrable under Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1)."[6]

Section 6(a) of the Trademark Act, 15 U.S.C. § 1056(a) reads, in relevant part, as follows:

> The Director may require the applicant to disclaim an unregistrable component of a mark otherwise registrable.

A disclaimer is a statement that the applicant or registrant does not claim the exclusive right to use a specified element or elements of the mark in a trademark application or registration. The significance of a disclaimer is conveyed in the following statement:

> As used in trademark registrations, a disclaimer of a component of a composite mark amounts merely to a statement that, in so far as that particular registration is concerned, no rights are being asserted in the disclaimed component standing alone, but rights are asserted in the composite; and the particular registration represents only such rights as flow from the use of the composite mark.

*Sprague Electric Co. v. Erie Resistor Corp.,* 101 USPQ 486, 486-87 (Comm'r Pats. 1954).

The Trademark Office may require a disclaimer as a condition of registration if the term in the mark is generic with respect to at least some of the goods in the genus, and registration is properly refused in the absence of a disclaimer. *In re Greenliant Systems Ltd.,* 97 USPQ2d 1078, 1082 (TTAB 2010), *citing In re Analog Devices, Inc.,* 6 USPQ2d 1808, 1810 (TTAB 1988), *aff'd without pub. op.,* 871 F.2d

---

[6] Trademark Examining Attorney Brief, p. 4 (unnumbered).

A000007

Serial No. 77816809

1097, 10 USPQ2d 1879 (Fed. Cir. 1989) (registration is properly refused if the subject matter for registration is generic of any one of the goods for which registration is sought); and *In re Creative Goldsmiths of Wash., Inc.*, 229 USPQ 766, 768 (TTAB 1986) ("[I]t is within the discretion of an Examining Attorney to require the disclaimer of an unregistrable component (such as a common descriptive, or generic, name) of a composite mark sought to be registered on the Principal Register under the provisions of Section 2(f).").

Failure to comply with a requirement for a disclaimer is a basis on which to refuse registration. *See In re Slokevage*, 441 F.3d 957, 78 USPQ2d 1395, 1399-1400 (Fed. Cir. 2006); *In re Stereotaxis Inc.*, 429 F.3d 1039, 77 USPQ2d 1087, 1089 (Fed. Cir. 2005); *In re Omaha Nat'l Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed. Cir. 1987); *In re Richardson Ink Co.*, 511 F.2d 559, 185 USPQ 46, 47 (C.C.P.A. 1975); *In re Nat'l Presto Indus., Inc.*, 197 USPQ 188, 190 (TTAB 1977); *In re Pendleton Tool Indus., Inc.*, 157 USPQ 114, 115 (TTAB 1968).

When a proposed mark is refused registration as generic, or a disclaimer is required on that basis, the examining attorney has the burden of proving genericness by "clear evidence" thereof. *See In re Hotels.com*, 573 F.3d 1300, 91 USPQ2d 1532, 1533 (Fed. Cir. 2009); *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 828 F.2d 1567, 4 USPQ2d 1141, 1143 (Fed. Cir. 1987); and *In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110, 1111 (Fed. Cir. 1987).

The issue is to determine whether the record shows that members of the relevant public primarily use or understand the term sought to be registered to

6

Serial No. 77816809

refer to the category or class of goods in question. *H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 228 USPQ 528, 530 (Fed. Cir. 1986); *In re Women's Publishing Co. Inc.*, 23 USPQ2d 1876, 1877 (TTAB 1992). Making this determination "involves a two-step inquiry: First, what is the genus of goods or services at issue? Second, is the term sought to be registered ... understood by the relevant public primarily to refer to that genus of goods or services?" *Ginn*, 228 USPQ at 530. Evidence of the public's understanding of a term may be obtained from any competent source, including testimony, surveys, dictionaries, trade journals, newspapers and other publications. *See Merrill Lynch*, 4 USPQ2d at 1143; *In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 227 USPQ 961, 963 (Fed. Cir. 1985).

We begin by finding that the genus of the goods at issue in this case is sauces, marinades and spices. *Magic Wand Inc. v. RDB Inc.*, 940 F.2d 638, 19 USPQ2d 1551, 1552 (Fed. Cir. 1991) ("[A] proper genericness inquiry focuses on the description of [goods or] services set forth in the [application or] certificate of registration.").

Turning to the second inquiry, how the public understands the term, the relevant public consists of ordinary consumers who eat fried fish.

As noted above, the evidentiary burden of establishing that a term is generic rests with the USPTO and the showing must be based on clear evidence. *Merrill Lynch*, 4 USPQ2d at 1143.

7

Serial No. 77816809

Based on the record described below, we find that there is clear evidence to support a finding that the relevant public, when it considers FISH FRY PRODUCTS in conjunction with sauces, marinades and spices, readily understands the term to identify a type of sauce, marinade or spice used for fish fries.

A "fish fry" is defined as follows:

> 1. A cookout or other meal at which fried fish is the main course.
>
> 2. A piece of fried fish.[7]

Applicant used the term "fish fry" in its Registration No. 2827571 to identify "seasoned batter mix mixes, namely, fish fry, chicken fry and shrimp fry."

The word "product" is defined, *inter alia*, as follows:

> (1): something produced; *especially:* COMMODITY (2): something ... that is marketed or sold as a commodity.[8]

Thus, the meaning of the term "fish fry products" is a commodity sold or used with fried fish. The combination of the term "fish fry" with the word "products" does not have an incongruous meaning or form a unique commercial as applied to applicant's goods such that the term "Fish Fry Products" loses its ordinary meaning.

In her August 8, 2012 Office action, the Trademark Examining Attorney submitted the evidence set forth below to prove that "fish fry" is commonly used to

---

[7] *Yahoo! Education* (yahoo.com). *See also MSN Encarta* Dictionary (encarta.msn.com) ("a meal with deep-fried fish as the main course"); *Merriam-Webster Online* (merriam-webster.com) ("a picnic or supper featuring fried fish"; "fried fish") (March 22, 2010 Office action). (December 14, 2009 Office action).

[8] *Merriam-Webster Online* (merriam-webster.com). *See also MSN Encarta* Dictionary (encarta.msn.com) ("company's goods or services: the goods or services produced by a company"). (March 22, 2010 Office action).

8

A000010

Serial No. 77816809

identify fried fish and dinners featuring fried fish. The evidence also highlights the sauces, marinades and spices associated with fish fries.

    1.    Eleven articles from the LexisNexis database using the term "fish fry" to identify fried fish meals. The following articles are representative:

    a.    *Milwaukee Journal Sentinel* (March 3, 2000)

Where to cast your line for a different bit of fish

*    *    *

So generally speaking, our search for fish fries with a twist found that your fried fish is safe in Milwaukee – thought it sometimes gets updated and redefined with spices and marinades.

    b.    *Chicago Sun Times* (April 23, 2010)

Solid entertainment; Little Bucharest Bistro puts a new twist on Old World fare

*    *    *

Revolution Brewing Taps Into Beer Frenzy

*    *    *

The frites with the fish were quite good, too, but the roasted red pepper remoulade and the honey jalapeno slaw were even better, elevating this rather simple fish fry to another level of deliciousness.

    c.    *Star Tribune* (Minneapolis) (March 11, 2012)

Deals of the week

Food

Famous Dave's (16 participating Twin Cities locations …) has entered the all-you-can-eat fish fry business on Fridays, now through April 8. The menu: cod fried in

9

A000011

cornmeal-lager beer, a spicy pickle tartar sauce, cornbread muffins and a choice of two sides, for $14.99.

2.     Evidence from Internet websites.

a.     On July 6, 2011, the *Al Dente Blog* (aldenteblog.com) posted "The Utica Edition: Fish Fry, Not Just For Friday Nights."

> If you grew up in Utica, it wasn't until you left that you realized many of the foods you were accustomed to couldn't be found in other parts of the country. Tomato pie is just one example. Friday night fish fry is another.
>
> Now, fish fry is by no means unique to Utica. You can find it all around Upstate New York, if not much of the Northeast. …
>
> In Utica [sic] fish fry includes fried haddock, french fries (or sometimes a baked potato), cole slaw and tartar sauce.

The readers posted comments regarding their experiences with "fish fries."

b.     Ray's Butcher Shoppe (raysbutchershoppe.com) advertised a "Friday Fish Fry Carryout." "All buckets and dinners include tartar or seafood sauce."

c.     An article about "fish fry" in Albany posted August 23, 2011 on the *All Over Albany* magazine website (alloveralbany.com) entitled "Fish Fry at Gene's."

> As a primer to those unfamiliar with the form, there are three fish fry sauces: tartar, cocktail and chili.

3.     Recipes using the term "fish fry."

a.     Recipe posted on the Indian food blog (recipes-indianfood.blogspot.com)

10

A000012

Serial No. 77816809

Pan Fried Indian Fish Fry Recipe

Fish fry recipe is a simple and heart healthy recipe made
with marinated fish filets, fried on a non-stick pan over
medium heat.   In this fish fry recipe I have used the
Tilapia fish.

The recipe include a recipe for fish marinade

b.      Recipe posted on the Sinful Curry website (sinfulcurry.com) for

"Pan Roasted Salmon/Kerala Fish Fry."[9]

... This is a staple for most meat eating Malayalees and
we usually have a number of ways of cooking it.   But I
find the 'Kerala fish fry' to the tastiest and easiest of them
all.

There are five basic ingredients for this fried fish marinade:  ginger, garlic, chili,

turmeric and salt.

c.      A recipe for Malvani Fish Fry, including a marinade, posted on

Niya's World website (niyasworld.blogspot.com).  One of the three posted comments

was "Yummy fish fry ... crisp."

d.      A "Homemade Fried Catfish –Fish Fry Recipe," including a

marinade, posted on the *FindItRecipe.com* website ("Perfect for a summer fish-fry.").

e.      A recipe for "Beer Battered Fish Fry With Homemade Tartar

Sauce" posted on the *GroupRecipes.com* website.

Our friends on the lake had a fish fry a couple of weeks
ago, and the fish was great!.  This is his recipe.  The
tartar sauce is what was made in my house growing up,

---

[9] *See also Pazham Pappadam Payasam* website (cookingwithkairalisisters.com) for a
"Kerala style Masala Tilapia fry" ("Fish fry is something that seafood lovers cannot resist"
and "if you like the fish fry a little tangy add about a ½ tsp tamarind paste along with the
marinade.").

11

A000013

Serial No. 77816809

> every time we had fish, whether it was frozen fish sticks
> or sole!

    f.    Rachael Ray posted a recipe for "Fish Fry with Tartar Sauce" on her website *RachaelRayShow.com*.

    g.    The *IHaveTheRecipeForThat.com* website posted (July 9, 2011) a recipe for "Homemade Cocktail Sauce for your Fish Fry."

> This time of year I always see people in the grocery store
> buying jars of cocktail sauce. I like to assume that they
> have gotten back from an exciting deep sea fishing trip
> and are cooking up their fresh catch and having a fish fry.

In her March 22, 2010 Office action, the Trademark Examining Attorney submitted the evidence listed below to prove that marinades, sauces and spices are an integral part of fried fish recipes.

    a.    The *Wikipedia.com* entry for "Rémoulade" which states that rémoulade "is now more often used as an accompaniment to seafood dishes, especially pan-fried breaded fish fillets." *See also* entry for "Rémoulade Sauce Recipe" posted on the *Life123.com* website ("It has become popular to use rémoulade with fish dishes, especially sole and other breaded and fried fish.").

    b.    A recipe for "Fried Fish Marinated in Garlic, Vinegar, Oregano, and Cumin" posted on the October 2002 issue of the *Bon Appétit* magazine (epicurious.com).

> Generally this dish is served in Andalusia as part of a
> mixed fish fry, but it's wonderful on it's [sic] own. The
> marinade makes the fish flavorful and succulent.

    c.    A "Marinated Fried Fish" recipe posted on the *PepperFool.com* website.

A000014

d.     The first ten of 184 listings from a search for "fish marinades" in the *Cooks.com* website. *See also* the list of sauce recipes for meat and fish posted on the Southern Food section of the *About.com* website.

e.     A "Buttermilk Marinated Fried Catfish Recipe" posted on the *Cookingfishmonger.com* website.

f.     A "Cornmeal Fried Catfish with Rémoulade Recipe" posted on the *Chow.com* website. This recipe explains that "Rémoulade is a mayonnaise loaded with flavor. ... Though it is normally served with fried-fish dishes such as our Cornmeal Fried Catfish, we also like it with boiled shellfish or mixed into a potato salad."

g.     A recipe for "Oven-Fried Catfish with Rémoulade Sauce" posted on the July 2007 issue of *Gourmet* magazine (epicurious.com).

h.     An article entitled "How to Make a Dipping Sauce for Fish and Seafood" posted on the *eHow.com* website. The author recommends the sauce with baked, broiled or fried fish.

i.     An advertisement for the sale of individual portions of "Cocktail Sauce" posted on the *WebRestaurantStore.com* website. It is a "House blend Seafood Cocktail Sauce" that is promoted for use with "fried shrimp, fried fish, oysters, and crab cakes."

j.     A recipe for "Cajun Cuisine (Fried Catfish With Cajun Seafood Sauce)" posed on the *Cooks.com* website.

A000015

Serial No. 77816809

    k.    Emeril Lagasse's recipe for "Fried Fish Fingers with Tartar Sauce" posted on the *FoodNetwork.com* website. The recipe notes that "Pan-Crispy Fish with Crawfish Sauce" is a similar recipe. *See also* the "Fried Fish, Tartar Sauce, French Fries and Hushpuppies" recipe posted on the *BigOven.com* website; "How to Make Fried Fish and Tartar Sauce at Home" posted on the *eHOw.com* website.

    m.    The fried fish recipes posted on the *Whatscookinginamerica.com, Gameandfishingrecipes.com, CookingLouisiana.com, Channel4.com* and the *eHOw.com* websites list cayenne pepper as an essential ingredient for the fish batter.

In her October 25, 2010 Office action, the Trademark Examining Attorney submitted 23 news articles demonstrating the use of sauces, marinades and spices in connection with fried fish. The following articles are representative:

    a.    The Columbus Dispatch (March 4, 2010)

Offshoot falls short of mark for Cincinnati classic

*    *    *

Several pieces of battered, deep-fried cod (Ted's fish fry, $17.50) are enhanced by an excellent tartar sauce with horseradish overtones.

    b.    *St. Louis Post-Dispatch* (April 2, 2004)

Fish Fries Offer a Place For Gab and Grub

Parishioners Bond in Lenten Tradition

*    *    *

… Her personal but thorough survey of the area's many fish purveyors earned her a splash at the St. Louis

14

A000016

Serial No. 77816809

Review, the newspaper of the St. Louis Archdiocese, which in 199 called her the "fish fry aficionado."

Stretch, 56, grew up in Glasgow Village and prefers the traditional squared cod portion to the baked filets that some places serve to accommodate changing tastes. But she doesn't want her fried fish to taste greasy. And she likes homemade cocktail sauce and anything else that the fish-fry volunteer armies don't pour from cans.

c.    *The Boston Globe* (March 5, 2008)

Good Food, Drink, Music Are On The Playlist

\*        \*        \*

The Highland fish fry is a piece of moist, perfectly fried catfish served with hush puppies and remoulade. There's also craveable po' boy of blackened catfish on baguette, served with sweet house-made pickles. There's a bit of heat to it from the cayenne, but it tastes downright mild beside a bowl of curried goat stew on jasmine rice …

In its April 28, 2011 response to an Office action, applicant submitted an excerpt from its website Applicant's website (louisianafishfry.com) shown below. The website displays the terms "Louisiana Fish Fry Shopping" and "America's #1 Selling Fish Fry" and advertises products for fish fries, namely, sauces, marinades and spices.

15

Serial No. 77816809

: Louisiana Fish Fry Shopping :                                          Page 1 of 1



The Rex Fine Foods website (rexfoods.com) advertises that company's spices

and seasonings for use at fish fries (*i.e.*, fish fry products).

Cajun Supermarket (cajunsupermarket.com) also advertises sauces and

spices. Cajun Supermarket promotes itself as follows:

> Welcome to the Internet's premier source for All
> Louisiana Cajun & Creole, goods and accessories. We
> specialize in offering the most sought after Louisiana
> products.

16

A000018

There is no dispute that the term "Fish Fry" is a unitary term that means fried fish. The issue before us, therefore, centers on the effect of the addition of the word "Products" to the term "Fish Fry." The word "products" as used in the term "Fish Fry Products" carries its dictionary definition and is without any source-identifying capability. *See In re Paint Products Co.*, 8 USPQ2d 1863, 1866 (TTAB 1988) ("[P]urchasers encountering the words 'PAINT PRODUCTS CO.' on the goods for which registration is sought [paints and coatings] would view those words not as a trademark, but in their ordinary dictionary sense; a company that sells paint products [and] because it describes the goods of any company selling such products, the phase should remain available for applicant's competitors"). *See also In re Taylor & Francis [Publishers] Inc.*, 55 USPQ2d 1213, 1215 (TTAB 2000) (the word "press" in the mark PSYCHOLOGY PRESS is in the nature of entity designation which is incapable or serving a source-indicating function). Therefore, FISH FRY PRODUCTS is the combination of two generic terms, "Fish Fry" and "Products," joined to create a compound term. *See In re Wm. B. Coleman Co.*, 93 USPQ2d 2019, 2025 (TTAB 2010); *In re Eddie Z's Blinds and Drapery, Inc.*, 74 USPQ2d 1037, 1041-42 (TTAB 2005). In this case, the separate terms retain their generic significance when joined together to form the compound term that has "a meaning identical to the meaning common usage would ascribe to those words as a compound." *In re Wm. B. Coleman Co.*, 93 USPQ2d at 2025, *quoting In re Gould Paper Corp.*, 834 F.2d 1017, 5 USPQ2d 1110, 1111-12 (Fed. Cir. 1987). Accordingly,

17

Serial No. 77816809

consumers will perceive the term in its ordinary dictionary sense as commodities used for preparing and eating fried fish.

Even if we treat FISH FRY PRODUCTS as a phrase, rather than a compound term, the record continues to support finding that FISH FRY PRODUCTS is generic when used in connection with sauces, marinades and spices for fried fish even in the absence of evidence that applicant's competitors use the term FISH FRY PRODUCTS. *See In re Nat'l Shooting Sports Found., Inc.*, 219 USPQ 1018, 1020 (TTAB 1983) (SHOOTING, HUNTING, OUTDOOR TRADE SHOW AND CONFERENCE held apt descriptive name for conducting and arranging trade shows in the hunting, shooting, and outdoor sports products field even though applicant was the only user of the term). The evidence noted above establishes that FISH FRY PRODUCTS identifies the type of sauces, marinades and spices applicant is selling (*i.e.*, sauces, marinades and spices used with fried fish).

Applicant argues that its products are not limited to fried fish and, in fact, some of the products would ordinarily not be used on fried fish.[10] However, if a mark is found generic for one of several products listed in the description of goods, registration will be refused for that entire class of goods. *See In re Quik-Print Copy Shop, Inc.*, 616 F.2d 523, 205 USPQ 505, 507 (CCPA 1980) ("Registration will be denied if a mark is merely descriptive of any of the goods or services for which registration is sought."); *In re theDotCommunications Network LLC,* 101 USPQ2d 1062, 1068 (TTAB 2011).

---

[10] Applicant's Brief, p. 7. *See also* Applicant's Reply Brief, pp. 3-4.

18

Serial No. 77816809

Applicant also argues that although "Fish Fry" may be generic for fried fish batter that does not make it generic for sauces, marinades or spices.[11]  However, applicant's mark is FISH FRY PRODUCTS, not just "Fish Fry," and the meaning and commercial impression engendered by the mark in its entirety are commodities (*i.e.*, sauces, marinades and spices) used in connection with fried fish.

In view of the foregoing, we find that the relevant public will understand FISH FRY PRODUCTS to refer to sauces, marinades and spices used in connection with preparing and eating fried fish.   FISH FRY PRODUCTS is, therefore, incapable of identifying the source of such products because it is a term that purchasers will understand and will use to refer to as a type of product.  As such, it must be left available for use by other companies that sell sauces, marinades and spices.   Accordingly, the exclusive use of FISH FRY PRODUCTS must be disclaimed.

B.      Whether the term "Fish Fry Products" has acquired distinctiveness?

If, on appeal, it should be found that FISH FRY PRODUCTS is not generic for any of the identified goods, it may nonetheless be considered at least descriptive of the goods and, if so, unregistrable in the absence of a showing of acquired distinctiveness.   Accordingly, we now consider in detail applicant's evidence of acquired distinctiveness.

In finding above that the designation FISH FRY PRODUCTS is incapable of being a source identifier for applicant's goods (*i.e.*, sauces, marinades, and spices),

---

[11] Applicant's Brief, pp. 8-9.

19

A000021

Serial No. 77816809

we considered all of the evidence touching on the public perception of this designation, including the evidence of acquired distinctiveness. In this section of our opinion, we consider the evidence of acquired distinctiveness only with regard to whether it would be sufficient to allow registration of applicant's mark without a disclaimer, if FISH FRY PRODUCTS ultimately is found merely descriptive but not generic. Under such circumstances, applicant has the burden to establish a *prima facie* case of acquired distinctiveness. *See Yamaha International Corp. v. Hoshino Gakki Co., Ltd.*, 840 F.2d 1572,6 USPQ2d 1001, 1006 (Fed. Cir. 1988).

The amount and character of evidence required to establish acquired distinctiveness depends on the facts of each case and particularly on the nature of the mark sought to be registered. *See Roux Labs., Inc. v. Clairol Inc.*, 427 F.2d 823, 829, 166 USPQ 34, 39 (C.C.P.A. 1970); *In re Hehr Mfg. Co.*, 279 F.2d 526, 528, 126 USPQ 381, 383 (C.C.P.A. 1960); *In re Gammon Reel, Inc.*, 227 USPQ 729, 730 (TTAB 1985). Typically, more evidence is required where a mark is so highly descriptive, that purchasers seeing the matter in relation to the named goods would be less likely to believe that it indicates source in any one party. *See, e.g., In re Bongrain Int'l Corp.*, 894 F.2d 1316, 1318, 13 USPQ2d 1727, 1729 (Fed. Cir. 1990); *In re Seaman & Assocs., Inc.*, 1 USPQ2d 1657, 1659 (TTAB 1986); *In re Packaging Specialists, Inc.*, 221 USPQ 917, 919 (TTAB 1984).

Applicant submitted the evidence listed below to prove that FISH FRY PRODUCTS has acquired distinctiveness.

A000022

Serial No. 77816809

A.  February 2, 2010 response to Office action.

1.  Declaration of William Pizzolato, applicant's President, attesting that the term FISH FRY PRODUCTS as acquired distinctiveness through applicant's substantially exclusive and continuous use of FISH FRY PRODUCTS for at least five years preceding the date of the declaration. Because of the highly descriptive nature of the term FISH FRY PRODUCTS, a declaration of applicant's substantially exclusive and continuous use of the term for five years will not be sufficient to establish distinctiveness. *See In re Kalmbach Publ'g Co.*, 14 USPQ2d 1490 (TTAB 1989) (holding applicant's sole evidence of acquired distinctiveness, a claim of use since 1975, insufficient to establish that the highly descriptive, if not generic, designation RADIO CONTROL BUYERS GUIDE had become distinctive of applicant's magazines); *In re Gray Inc.*, 3 USPQ2d 1558, 1559 (TTAB 1987) ("[T]o support registration of PROTECTIVE EQUIPMENT [for burglar and fire alarms and burglar and fire alarm surveillance services] on the Principal Register a showing considerably stronger than a prima facie statement of five years' substantially exclusive use is required."); *cf. In re Synergistics Research Corp.*, 218 USPQ 165 (TTAB 1983) (holding applicant's declaration of five years' use sufficient to support registrability under §2(f) of BALL DARTS for equipment sold as a unit for playing a target game, in view of lack of evidence that the term is highly descriptive (e.g., no dictionary evidence of any meaning of BALL DARTS and no evidence of use of the term by competitors or the public)).

21

A000023

Serial No. 77816809

2.    Applicant claimed ownership of the following registrations:

a.    Registration No. 2794015 for the same mark as in the application at issue for "cajun blackened seasoning." Applicant disclaimed the exclusive right to use "Fish Fry Products" and "Est. 1982" and claimed that LOUISIANA and the map of LOUISIANA had acquired distinctiveness.

b.    Registration No. 2827057 for the same mark as in the application at issue without the fleur de lis for "seasonings, namely, crawfish, crab and shrimp boil; mixes, namely, dirty rice mix consisting primarily of rice and also containing vegetables; etouffee mix consisting primarily of flour, seasonings, and also containing vegetables; gravy mix; gumbo mix consisting primarily of flour seasonings and also containing onions; jambalaya mix consisting primarily of packaged rice and spices; red beans and rice mix consisting primarily of rice, beans, seasoning, and also containing vegetables; shrimp creole mix consisting primarily of flour and seasonings and also containing vegetables; and cobbler mix consisting primarily of sugar, flour, leavening and spices." Applicant disclaimed the exclusive right to use "Products" and "Est. 1982" and claimed that LOUISIANA and the map of LOUISIANA had acquired distinctiveness.

c.    Registration No. 2827571 for the same mark as in the application at issue without the fleur de lis for "hush puppy mix, seasoned batter mixes, namely, fish fry, chicken fry, and shrimp fry, baking seasonings for chicken and fish." Applicant disclaimed the exclusive right to use "Fish Fry Products" and

A000024

Serial No. 77816809

"Est. 1982" and claimed that LOUISIANA and the map of LOUISIANA had
acquired distinctiveness.

B.      April 28, 2011 response to Office action.

        1.      Applicant claimed ownership of the following registrations:

        a.      Registration No. 2801892 for the mark LOUISIANA FISH FRY
PRODUCTS, in typed drawing form, for *inter alia,* seasonings and sauces.[12]
Applicant claimed that "Louisiana" had acquired distinctiveness and disclaimed the
exclusive right to use "Products."

        b.      Registration No. 2827058 for the mark LOUISIANA FISH FRY
PRODUCTS and design, shown below, for "cocktail sauce, tartar sauce, seafood
sauce and remoulade dressing."  Applicant claimed that "Louisiana" had acquired
distinctiveness and disclaimed the exclusive right to use "Products."



With respect to the third-party registrations, the examining attorney has the
discretion to determine whether the nature of the mark sought to be registered is
such that a claim of ownership of a prior registration for the same or similar goods
or services is enough to establish acquired distinctiveness.  For example, if the mark
sought to be registered is deemed to be highly descriptive of the goods named in the
application, the examining attorney may require additional evidence of acquired

---

[12] Issued January 6, 2004; renewed

23

distinctiveness. *See In re Loew's Theatres, Inc.*, 769 F.2d 764, 769, 226 USPQ 865, 869 (Fed. Cir. 1985) (finding claim of ownership of a prior registration insufficient to establish acquired distinctiveness where registration was refused as primarily geographically deceptively misdescriptive).

> ... [E]ach application for registration of a mark for particular goods must be separately evaluated. Nothing in the statute provides a right *ipso facto* to register a mark for additional goods when items are added to a company's line or substituted for other goods covered by a registration. Nor do the PTO rules afford any greater rights. Under Rule 2.41(b), in appropriate cases, a prior registration on the Principal Register for the same mark "may" be accepted as "evidence" of distinctiveness, but the same rule reserves to the PTO discretion to require additional proof.

*Id.*

If the term for which the applicant seeks to prove distinctiveness was disclaimed in the prior registration, the prior registration may not be accepted as prima facie evidence of acquired distinctiveness because a disclaimer is a statement that the applicant or registrant does not claim the exclusive right to use a specified element of the mark. *Kellogg Co. v. Gen. Mills, Inc.*, 82 USPQ2d 1766, 1771 n.5 (TTAB 2007); *In re Candy Bouquet Int'l, Inc.*, 73 USPQ2d 1883, 1889-90 (TTAB 2004).

In this case, the term FISH FRY PRODUCTS is highly descriptive and, in two of applicant's five registrations, it disclaimed the exclusive right to use the term "Fish Fry Products." While we have considered applicant's prior registrations, we

24

Serial No. 77816809

are unpersuaded as to the sufficiency of this proof standing alone in view of the manner in which the marks are used. *See* the discussion *infra*.

C.    December 9, 2011 response to Office action.

Declaration of William Pizzolato, applicant's President, attesting to the following facts:

1.    Applicant has used the mark LOUISIANA FISH FRY PRODUCTS in connection with various consumer food products for over thirty years;[13]

2.    Applicant has sold in excess of $100,000,000 worth of consumer food products under the mark LOUISIANA FISH FRY PRODUCTS of which it has sold over $17,000,000 of product listed in the description of goods of the application at issue since 2007;[14]

3.    Applicant's LOUISIANA FISH FRY PRODUCTS in in over 40% of the grocery stores in the United States;[15] and

4.    Since 2009, applicant has spent over $2,400,000 on advertising LOUISIANA FISH FRY PRODUCTS in the United States.[16]

Applicant contends, *inter alia*, that it is the entire phrase "Louisiana Fish Fry Products" that has acquired distinctiveness, not just the phrase "Fish Fry

---

[13] Pizzolato Dec. ¶¶3 and 4.
[14] Pizzolato Dec. ¶¶7 and 9.
[15] Pizzolato Dec. ¶10.
[16] Pizzolato Dec. ¶11.

A000027

Serial No. 77816809

Products."[17]    However, in the mark sought to be registered, depicted below, "Louisiana" and the term "Fish Fry Products" do not form a unitary whole.



The manner in which the term LOUISIANA FISH FRY PRODUCTS is displayed highlights the name LOUISIANA because it is much larger than any of the other words in the mark. In addition, the term "Fish Fry Products" is displayed in an oval carrier underneath and in much smaller letters than the name LOUISIANA. Thus, the commercial impression engendered by the mark is LOUISIANA brand "Fish Fry Products." *See Kellogg Co. v. General Mills Inc.*, 82 USPQ2d at 1772:

> Considering connotation and commercial impression, the CINNAMON TOAST portion of the CINNAMON TOAST CRUNCH mark is a unitary term describing a specific type of toast and a cereal flavor. The CRUNCH portion of the mark appears separable from that connotation and connotes a characteristic or texture of cereal. While applicant's claim of acquired distinctiveness in the instant application pertains only to the CINNAMON TOAST portion of the mark, we find this portion of the mark to be unitary and sufficiently separable from the mark as a whole to conclude that the showing of acquired distinctiveness as to the mark as a whole is sufficient to support applicant's partial claim of acquired distinctiveness as to the phrase CINNAMON TOAST for breakfast cereal.

---

[17] Applicant's Brief, p. 10.

A000028

*Cf. In re Magic Muffler Service, Inc.,* 184 USPQ 125, 126 (TTAB 1974) (Vis-à-vis the display of MAGIC MUFFLER SERVICE, "since the designation 'MUFFLER SERVICE' is, in essence, a common descriptive designation for applicant's type of business, it is concluded that the examiner's holding that 'MUFFLER SERVICE' does not properly form part of applicant's mark and should not have been included as part of the drawing is well founded."). In other words, the name "Louisiana" is sufficiently distinct from the term "Fish Fry Products" that the two elements are not inseparable; they do not create a single and distinct commercial impression. *See Dena Corp. v. Belvedere International Inc.,* 950 F.2d 15555, 21 USPQ2d 1047, 1052 (Fed. Cir. 1991). Because the phrase LOUISIANA FISH FRY PRODUCTS, as displayed in the mark sought to be registered, does not comprise a unitary term, the term "Fish Fry Products" must be disclaimed unless it is found that the term has acquired distinctiveness separate and apart from the name LOUISIANA.

With respect to the term "Fish Fry Products" separate and apart from the name "Louisiana," we do not find applicant's evidence of acquired distinctiveness to be convincing. First, all the evidence is directed to the term LOUISIANA FISH FRY PRODUCTS, not FISH FRY PRODUCTS.

Second, applicant's use for thirty years, while indicative of its commercial success, is not conclusive or persuasive considering the nature of the subject matter sought to be registered. *In re Ennco Display Systems Inc.,* 56 USPQ2d 1279, 1286 (TTAB 2000) (applicant's use of the product designs ranging from seven to seventeen years is insufficient to bestow acquired distinctiveness). *See also In re*

A000029

Serial No. 77816809

*Packaging Specialists, Inc.*, 221 USPQ 917, 920 (TTAB 1984) (evidence submitted by applicant held insufficient to establish acquired distinctiveness of PACKAGING SPECIALISTS, INC., for contract packaging services, notwithstanding, *inter alia*, continuous and substantially exclusive use for sixteen years, deemed "a substantial period but not necessarily conclusive or persuasive").

Likewise, applicant's sales and advertising while extensive do not shed any light on whether consumers perceive the term FISH FRY PRODUCTS as a source indicator since the term is used only in association with the name "Louisiana" that, as indicated above, engenders the commercial impression of LOUISIANA brand "Fish Fry Products."

Finally, the record is lacking in any media recognition regarding applicant's products and how the term FISH FRY PRODUCTS points uniquely and exclusively to applicant.

To put the matter simply, the evidence is not sufficient to establish that FISH FRY PRODUCTS has acquired distinctiveness.

**Decision**: The requirement that applicant disclaim the term FISH FRY PRODUCTS is affirmed and registration to applicant is refused. However, in the event that applicant submits the required disclaimer within thirty (30) days of the mailing date of this decision, the refusal to register will be set aside and the application will proceed to publication.[18] See Trademark Rule 2.142(g).

---

[18] A proper disclaimer reads as follows: "No claim is made to the exclusive right to use FISH FRY PRODUCTS apart from the mark as shown."

A000030